IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF:<br><br>Jelanie Solomon, a black male<br>DOB 3/22/79 | Magistrate No. 06-122M<br>Under Seal |

**MEMORANDUM**

Defendant has moved to quash a search warrant signed by a Magistrate Judge for the Federal Drug Enforcement Administration to take samples of blood and saliva from the Defendant in sufficient quantities for forensic testing. The Court has denied the Defendant's Motion to Quash, and issues this Memorandum to set forth its reasoning.

The affidavit submitted in support of the search warrant was sworn by a member of the Pennsylvania State Police assigned to the Bureau of Drug Law Enforcement Western Interdiction Unit as a Task Force Officer in a Drug Enforcement Agency ("DEA") Pittsburgh Task Force. The subject of the warrant has been indicted by a federal grand jury (U.S. D.C. W. D. Pa. Criminal Docket No. 05-385) charged with *inter alia,* premeditated murder in furtherance of a drug trafficking crime. The affidavit avers that the victim was the father of an informant for the State Attorney General's Office in a narcotics investigation. The informant was to testify in the state court trial of the Defendant herein. The night before his testimony, the affidavit states that an actor hired by Defendant committed the murder.

establish a chain of custody for the samples and even if the database DNA matches the sample on the weapon, a sample of the Defendant's blood would have to be drawn for use in court. Conversely, the government argues that if there is no match, that is not dispositive as it would raise questions of whether the DNA on file is indeed that of Defendant.

Both parties cite to the United States Supreme Court case of *Schmerber v. State of California,* 384 U.S. 757 (1966) in support of their position. The petitioner in that case was charged with driving under the influence of alcohol. The blood draw was done both without his consent and without a warrant, and he argued denial of due process and violation of his rights under the Fourth, Fifth, and Sixth Amendments. The Supreme Court recognized that taking blood from Petitioner clearly constituted a search of a person within the meaning of the Fourth Amendment. It pointed out, however, that "the Fourth Amendment's proper function is to constrain, not against all intrusions as such, but against intrusions which are not justified in the circumstances, or which are made in an improper manner." 384 U.S. at 768. The Court found that in the facts before it, the test chosen to measure the Petitioner's blood alcohol level was reasonable because the extraction of blood samples is an effective method of determining the level of alcohol a person has consumed. "Such tests are commonplace in these days of periodic physical examination and experience with them teaches that the quantity of blood extracted is minimal, and that for most people the procedure involves virtually no risk, trauma, or pain." *Id.* at 771. In addition, the Court noted that the test was performed in a reasonable manner and according to accepted medical practices.

In *Winston v. Lee,* 470 U.S. 753 (1985) the Supreme Court held that compelling a surgical procedure, including the administration of general anesthesia, to remove a bullet from a suspect's chest was an unreasonable search. The Court found that, while probable cause for the

The handgun used in the murder has been recovered by the authorities and forensic tests indicate it contains three DNA samples. One DNA sample matches that of the alleged shooter. The affiant avers that there is probable cause to believe that Defendant committed the offenses charged by the grand jury in the superseding indictment, specifically violations of Title 18, United States Code, Sections 924 (c), 924 (j) and 922 (g) and that evidence of these crimes can be found by taking blood and saliva samples from the Defendant to compare with the samples found on the handgun.

Defendant argues that the warrant should be quashed because execution would violate his constitutional rights against unreasonable searches and seizures and due process of law on the following four basis:

1. There exists a less obtrusive means of obtaining the DNA in that a previous blood sample was provided by the Defendant to the Bureau of Prisons, which has been analyzed for DNA.

2. Defendant has a mental anxiety relative to the process due to a scar on his arm from the last blood draw.

3. The application for the search warrant does not contain the requisite probable cause.

4. The government is on a fishing expedition.

The government's response argues that no Sixth Amendment right is implicated in the taking of blood samples and Defendant cannot make argument concerning probable cause and reasonableness until after the warrant has been executed. In addition, a Magistrate Judge has already found probable cause in issuing the warrant and the taking of blood samples has been widely approved by the courts. The government further argues that the DNA samples already on file with the state are not helpful to this case because the database personnel are unable to

search existed, the proposed surgery would be an "extensive intrusion" into the suspect's body. *Id.* at 1619. The Court basically developed a three point balancing test, drawing from *Schmerber*, in making its decision:

> 1. the extent to which the procedure may threaten the safety or health of the individual;
> 2. the extent of intrusion on privacy, bodily integrity, and;
> 3. the community's interest in fairly and accurately determining guilt or innocence.

*See United States v. Bullock*, 71 F.3d 171, 176 (5th Cir. 1995).

In the present set of facts, drawing blood is a well proven method of testing DNA, and the Court has no reason to believe, nor has evidence been presented or argued that the blood draw will be done in other than in a reasonable manner, according to accepted medical practices. Taking blood samples is widely used and equally approved by the courts. *See United States v. Williams*, 2004 WL 1472794 (E.D. Pa. 2004). It does not involve an extensive intrusion into the Defendant's body and the Court finds Defendant's argument that he has a mental anxiety resulting from scarring from the last blood draw to be spurious. In addition, particularly with a criminal charge of this magnitude, the public has a significant interest in accurately determining Defendant's involvement.

Regarding probable cause, a Magistrate Judge has previously reviewed the affidavit and, by signing the search warrant, indicated a finding that probable cause existed. The undersigned would have reached the same conclusion. Finally, the Court sees no evidence of a "fishing expedition" as the affidavit in support of the warrant alleges a number of reasons to believe that the Defendant may be linked to this crucial piece of evidence.

For the foregoing reasons, the Court denied the Defendant's Motion to Quash the Search Warrant.

April 14, 2006                                        BY THE COURT:

 

_____
LISA PUPO LENIHAN
U.S. MAGISTRATE JUDGE